IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| William B. Chappie, ) | Case No. 8:13-cv-01790-RMG-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| United States of America, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendant [Doc. 20] and a motion for summary judgment filed by Plaintiff [Doc. 26.] Plaintiff is a federal prisoner, proceeding pro se, who brings this civil rights action against the United States pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671-2680, for alleged medical malpractice by Defendant. [Doc. 1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned is authorized to review all pretrial matters in cases regarding prison conditions and to submit findings and recommendations to the District Court.

Plaintiff filed this action on June 24, 2013,[1] against the United States. [Doc. 1.] On October 18, 2013, Defendant filed a motion for summary judgment. [Doc. 20.] That same day, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 21.] Plaintiff filed

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on June 24, 2013. [Doc. 1-3 (envelope marked as received by prison mailroom on June 24, 2013).]

a response in opposition and documents in support of his response on November 8, 2013, and also filed his own motion for summary judgment [Doc. 26]. The motions are now ripe for review.

## BACKGROUND

Plaintiff has been incarcerated at Estill Federal Correctional Institution ("Estill") since April 22, 2008, and has a history of hypertension, ischemic heart disease, arthritis, peripheral vascular disease, atherosclerotic coronary artery disease, cardiomyopathy, and hypercholesterolemia. [Doc. 20-2 ¶ 4.] Plaintiff alleges that Defendant breached the duty owed to him under 18 U.S.C. § 4042, which requires the Bureau of Prisons to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." Plaintiff alleges that he was sent for an ultrasound on his legs at the Carolina Heart Center on June 18, 2012, and that he had "severe plaquing in both legs." [Doc. 1 at 1.] He was not sent for a "catheterization" until October 30, 2012, which he claims was one year after the original order from Dr. Phillips. [*Id.*] Plaintiff asserts that due to the delay, he has significant blockage in his leg and he might "lose his leg, not to mention his life because of the 'medical neglect' by the staff" at Estill. [*Id.* at 2.] Plaintiff reports that he is a seventy-two year old male who has been incarcerated for five years, and that he has experienced significant health problems throughout his incarceration, including severe pain on the left side of his body, loss of feeling in his legs, poor circulation, and low blood pressure. [*Id.* at 2–3.] He asserts that under "normal circumstances," he would have received more prompt care. [*Id.*]

2

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

4

> (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Plaintiff alleges medical negligence under the FTCA. He claims that the Defendant's own doctors have determined that Plaintiff required a catheterization for his poor circulation and clogged arteries but that Plaintiff waited over a year to receive his treatment and that such delay is "very life threatening, and is certainly taken and continues to take years off the Plaintiff's life, causing him to be in acute and chronic pain." [*Id*. at 4.]

The FTCA provides a limited waiver of sovereign immunity that enables parties that are injured by an agent of the United States to obtain relief. The United States is the only proper defendant to a FTCA claim. *Holmes v. Eddy*, 341 F.2d 477 (4th Cir. 1965) (holding that federal agencies cannot be sued under the FTCA); *see also* 28 U.S.C. § 1346(b) (conferring jurisdiction on courts for tort claims "against the United States"). The FTCA has an administrative exhaustion requirement, pursuant to which a potential plaintiff must file an administrative tort claim. *See Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990). Defendant admits that Plaintiff meets the exhaustion requirement in this case. [Doc. 20-1 at 2.]

Under the FTCA, federal courts are directed to determine liability based upon a consideration of relevant state law. Since the medical negligence allegedly occurred in South Carolina, the substantive law of South Carolina controls. *See United States v. Neustadt*, 366 U.S. 696, 706 n. 15 (1961). Accordingly, the claims relating to care provided should be evaluated in accordance with South Carolina tort law. To prove negligence in South Carolina, a plaintiff must show (1) that defendant owed plaintiff a duty; (2) such duty was breached; and (3) damage resulted from the breach of the duty. *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (S.C. 2000). The duty owed under the FTCA is that of "reasonable care." *Pendergrass v. United States*, Case No. 11-CV-2706, 2013 WL 518842, at *2 (D.S.C. Feb. 12, 2013).

Additionally, in South Carolina, a plaintiff alleging a medical malpractice claim must prove by a preponderance of the evidence:

> (a) The recognized and generally accepted standards, practices, and procedures in the community which would be exercised by competent physicians in the same speciality under similar circumstances;
>
> (b) that the physician or medical personnel negligently deviated from the generally accepted standards, practices, and procedures;
>
> (c) that such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and
>
> (d) that the plaintiff was injured.

*Dumont v. United States*, 80 F.Supp.2d 576, 581 (D.S.C. 2000) (internal citations omitted). Furthermore, the plaintiff must establish by expert testimony both the "standard of care and the defendant's failure to conform to the required standard, unless the subject matter is of

6

common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct." *Martasin v. Hilton Head Health Sys. L.P.*, 613 S.E.2d 795, 799 (S.C. Ct. App. 2005) (*citing Gooding v. St. Francis Xavier Hosp.*, 487 S.E.2d 596, 599 (S.C. 1997)). "In addition to proving the defendant negligent, the plaintiff must also prove that the defendant's negligence was a proximate cause of the plaintiff's injury." *Carver v. Med. Soc'y of S.C.*, 334 S.E.2d 125, 127 (S.C. Ct. App. 1985). Finally, in South Carolina, the burden of proof in a medical malpractice case is entirely upon the plaintiff. *Dumont*, 80 F. Supp. 2d at 581.

As an initial matter, Plaintiff failed to file the requisite expert affidavit with his Complaint. Under South Carolina Code § 15-36-100, Plaintiff is required to file "as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim . . ." This requirement is substantive, not procedural, and failure to do so subjects the case to dismissal. *See Rotureau v. Chaplin*, Case No. 2:09-CV-1388-DCN, 2009 WL 5195968, at *6 (D.S.C. Dec. 21, 2009). However, even if expert testimony were not required, Plaintiff fails to carry his burden of proof and demonstrate negligence, making summary judgment on Plaintiff's behalf appropriate.

First, Plaintiff argues that the prison doctor, Dr. Phillip, referred him to an outside specialist for "surgery" not for a "consult." [Doc. 26 at 1.] Plaintiff asserts that "normal medical procedure is that if a doctor refers a patient for heart surgery (catheterization) it is done within 10 days or less ..." [*Id*.] He claims that delaying the catheterization for eight months (until October 31, 2012) was a breach of duty of care "that *could* result in serious

problems." [*Id*. at 2 (emphasis added).] Second, Plaintiff was hospitalized in November 2011 for ulcers, and was seen in a follow up visit in February 2012. [*Id.*]  Plaintiff alleges that he has not had an "ECD" as recommended by the doctor as of the filing of the complaint and he still has stomach problems. [*Id.*]   Third, Plaintiff claims that he has a problem with his subclavian carotid artery, causing low blood pressure and pain in his left side, but that it has remained untreated for two and a half years. [*Id.* at 3.]   Finally, Plaintiff asserts that Defendant delayed his vascular surgery for thirteen months but "accepted medical procedure would be for surgery to be done in 30 days or less." [*Id*. at 4.] Plaintiff claims the delay caused the disease to worsen and caused him "excruciating pain" and made it "very difficult to walk." [*Id*.]   Plaintiff alleges that when the surgery was performed in December 2012, the surgery showed "7 oderative findings, severe plaquing and peripheral vascular disease." [*Id.*]   Plaintiff had additional surgery in April 2013, when several stints were inserted. [*Id.* at 5.] Post-surgery, Plaintiff claims that the recommended follow up procedures have not been followed and thus his condition is again worsening. [*Id.*]

Defendant's motion for summary judgment includes all medical records cited by Plaintiff, as well as an expert affidavit from Dr. Edward Reed.[2]  Reed attaches Plaintiff's complete medical history while at Estill to his affidavit, which the Court has reviewed. [Doc. 20-2.] On November 1, 2011, Plaintiff was seen by prison medical staff for a routine medical appointment. [Doc. 20-2 ¶ 5.] Plaintiff informed the doctor that he was

---

[2] Plaintiff makes the unsubstantiated claim in his response to Defendant's motion that Dr. Reed's affidavit contains "10 false statements." [Doc. 23 at 3.] The Court has reviewed the evidence attached to Dr. Reed's statement and finds that Reed properly relied on and cited Plaintiff's medical records, the same records upon which Plaintiff relies.

8

experiencing dizziness and chest pains. [*Id.*] Plaintiff was referred to a vascular and cardiac specialist for further treatment. [*Id.*] Plaintiff claims that he was referred to these specialists for surgery, not for a consult. [Doc. 23-1 at 1.] However, a close examination of the medical records reveals that Plaintiff was referred to a vascular surgeon with the instructions "please evaluate and perform ABI *if indicated*." [Doc. 20-2 at 15 (emphasis added).] The specific instructions for the cardiac surgeon stated the referral was for a six month follow up. [*Id.* at 16.] Therefore, Plaintiff's claim that he was referred only for surgery and not receiving surgery was an act of medical malpractice is unfounded; a thorough reading of the records reveals that Plaintiff was referred to specialists for consults and further action as needed.

On November 6, 2011, Plaintiff was seen by medical staff for complaints of a headache and general malaise for four days. [Doc. 20-2 ¶ 6.] He was evaluated and found not to be in distress, but was advised to come back the next day for a more thorough follow up. [*Id*.] The next day, Plaintiff was transported to the local emergency room for a cardiac consult. [*Id.* ¶ 7.] Plaintiff had no cardiac issues but the examination revealed several ulcers, for which he remained in the hospital for five days. [**Id.**] Plaintiff received follow up visits at the prison for his ulcers and for a resulting infection from his IV on November 14, 15, and 16, 2011. [*Id*. ¶¶ 9–10.] Plaintiff was again seen in December 2011, and expressed some stomach discomfort, and labs were done. [*Id*. ¶ 11.] Plaintiff's stomach medication was refilled on February 13, 2012, and he was transported to the local hospital to see a gastroenterologist on February 21, 2012. [*Id*. ¶¶ 12–13.]

9

The gastro specialist ordered a repeat EGD to see if ulcers were still present. [*Id.*] On February 23, 2012, Plaintiff was taken to see a cardiac specialist, who ordered a catherization. [*Id.* ¶ 14.] Plaintiff was seen by prison medical staff on February 24, 2012, and was informed that the prison was awaiting the reports of the specialists. [*Id.* ¶ 16.] Upon receipt of the cardiologist report on April 18, 2012, prison staff requested an appointment with the cardiologist to perform the needed procedures. [*Id.* ¶ 17.] On May 7, 2012, Plaintiff saw the vascular specialist again and on May 8, 2012, an appointment request was made for necessary vascular procedures. [*Id.* ¶ 19.] On June 6, 2012, Plaintiff complained of increasing pain on his left side, and on June 7, 2012, prison officials requested an appointment with the cardiologist for worsening symptoms. [*Id.* ¶¶ 20–21.] Plaintiff was transported to the specialist on June 18, 2012, and received an ultrasound and Doppler imaging. [*Id.* ¶ 22.] Plaintiff was seen for a routine follow up by prison officials on June 21, 2012, and was told that further procedures were being scheduled. [*Id.* ¶ 23.]

On September 5, 2012, Plaintiff saw the vascular specialist again. [*Id.* ¶ 28.] To lower the risk of kidney failure, the cardiac and vascular specialists recommended doing the needed procedures at the same time. [*Id.*] Plaintiff had a cardiac catheterization on October 30, 2012, and returned to Estill on October 31, 2012, where he was seen by medical staff. [*Id.* ¶¶ 29–30.] He received a follow up appointment with prison staff on November 2, 2012, on November 6, 2012, and on December 6, 2012. [*Id.* ¶¶ 31–33.] On December 10, 2012, Plaintiff saw the cardiac specialist, who performed a right retrograde femoral abdominal aortogram. [*Id.* ¶ 34.] He received a follow up from prison staff on December 11, 2012, and stated he was doing well. [*Id.* ¶ 35.] He was transported on

January 10, 2013, to see the vascular surgeon, who indicated he needed a further evaluation by peripheral angiogram, and thus returned to the vascular surgeon on February 3, 2013. [*Id.* ¶¶ 37–38.]  The surgeon determined that an angioplasty and stents were appropriate during an appointment on February 5, 2013. [*Id.* ¶ 38.] Plaintiff was seen by prison staff on February 6, 2013, as a follow up, and underwent preoperative clearance at the vascular surgeon's office on March 27, 2013. [*Id.* ¶¶ 39–40.] He underwent vascular surgery on April 25, 2013, without complication and was seen by prison medical staff for follow up on April 26 and April 30, 2013. [*Id*. ¶¶ 41–42.] During a follow up appointment with the vascular surgeon on May 9, 2013, Plaintiff was found to be doing well, he had pulses in both feet, and he was advised to follow up in three months. [*Id*. ¶ 45.]

The Court agrees, and Defendant concedes, that Defendant owed Plaintiff a duty under 18 U.S.C. § 4042 to provide adequate medical care.  As noted, the standard of care required under the FTCA is "reasonable care."  The Court finds that Plaintiff has failed to demonstrate negligence or malpractice by any prison officials, and therefore by the United States.  Besides his own conclusory statements about what is "normal" and "adequate," Plaintiff has failed to demonstrate what the appropriate standard for medical care is and has failed to show any deviation from the standard of care. The Plaintiff's medical records, as summarized above by the Court, demonstrate that Plaintiff received almost constant monitoring and care of all of his conditions.  He received multiple follow ups with prison staff and was transported to three different specialists (gastroenterology, cardiology and vascular surgery).  Plaintiff self reported to doctors after his procedures that he was doing

11

well. He received medication for all of his conditions, including his stomach, though the record shows he was not always compliant in taking the medication. [Doc. 20-2 ¶ 5.]

Moreover, Plaintiff has failed to show that the injury he suffered (the ulcers and claudication) was caused by the alleged negligence. Again, Plaintiff was closely monitored and treated according to multiple medical professional's prescriptions. While the timing of the surgeries may not have been as prompt as Plaintiff would have liked, Defendant has offered evidence that such delay was for Plaintiff's benefit–to minimize the number of procedures and do as many as possible at one time so as to not overly tax Plaintiff's body. The Court finds that Plaintiff has failed to put forth any evidence of negligence, his burden under South Carolina law, and thus summary judgment on Defendant's behalf is appropriate.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends Defendant's motion for summary judgment be GRANTED and Plaintiff's motion for summary judgment be DENIED.

IT IS SO RECOMMENDED.

                                        s/Jacquelyn D. Austin
                                        United States Magistrate Judge

June 16, 2014
Greenville, South Carolina